

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| M. CELESTE BARRAS<br><br>              Plaintiff,<br><br>vs.<br><br>HEALTHSOUTH MEDICAL CLINICS<br>OF ANCHORAGE, LLC & U.S<br>HEALTHWORKS HOLDING CO., INC.,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No A05-0174-CV (JWS) |

### PLAINTIFFS' INTIAL DISCLOSURES

**1.** Response to the defendants claim M. Celeste Barras was not discriminated against. Facts are as stated:

**Evidence of Retaliation exhibited and proven:**

Theresa's placing plaintiff on probation, was a direct and deliberate act of retaliation, for plaintiff reporting Theresa's bias behavior and obvious racial discrimination, though Dean failed to put a date on notes of the conversation between Dean and the plaintiff, that conversation took place prior to the plaintiff writing the letter to Theresa, dated February 12, 2001. Had the

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817

plaintiff been placed on probation prior to the conversation with Dean, there would be no evidence supporting the plaintiff's claim of retaliation. Covered under Civil Title VII though there is legitimate proof of racial bias in actions taken by both Whitney and Theresa when they failed to give equal treatment to plaintiff, as allowed for the Caucasian employee's. Per Whitney O'Neil; plaintiff's probation was extended because plaintiff was currently on probation. Theresa and Whitney had unanimously decided plaintiff would be terminated, regardless of attempts to meet the requirements of the probation and or resigning, at the suggestion of Whitney O'Neil. Both Theresa and Whitney had ample chance and opportunity to exercise the company policy of "At Will" discharge, Theresa having taken a position in which she did not hire the plaintiff, after Gretchen Thompson resigned, Theresa could have dismissed the plaintiff at that time. Plaintiff remained the same non-punctual employee due to circumstances beyond any individuals control from the start of her employment. Theresa had not placed the plaintiff on probation until after she complained to Dean Maniscalco about the bias racial actions of Theresa Harris. Whitney had the same chance and opportunity to dismiss the plaintiff "At Will" Ms. O'Neil had prior knowledge as to the plaintiff's probationary status Per the EEOC interview Ms O'Neil explains she extended the plaintiff's probation because she was already on probation under private sector "At Will" plaintiff could have been discharged with no explanation, instead

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817

U.S. Healthworks via Whitney O'Neil chose to continue keeping the plaintiff on the probation with the malicious intent to damage plaintiff's reputation and career. Per the written word of Whitney O'Neil on the probation paper dated 08-02-01, Ms O'Neil made the suggestion that the plaintiff **"may need to consider finding a job with more flexible work hours and expectations"** As employee handbooks may contain the term "At Will" and "May Be Terminated" Using a AMERICAN HERITAGE DICTIONARY, the word May is open for judgment giving Whitney a choice, she **did not have to terminate** the plaintiff, since Ms. O'Neil was the one who suggested the plaintiff find other employment, and granted the plaintiff an extended lunch for a job interview, which plaintiff told Whitney the extended lunch request was for a job interview. Whitney made the conscience choice to terminate which she voided her "AT Will" rights by her individual racially bias actions. **Acts of discrimination per co-workers:** Plaintiff was given a book titled "Happy to Be Nappy" purchased by, co-worker Lisa Baillon, that was a direct and derogatory reference, towards the plaintiffs hair. Plaintiff was nicknamed "Buckwheat" by Cheryl Senn-Rourick, the entire office also used this racially derogatory name referring to the plaintiff whenever plaintiff didn't straighten her hair.

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817

2. Plaintiff had no prior knowledge as to what information was in her personnel file until after her termination. Per the conversation with Dean Maniscalco he deliberately and inaccurately documented the conversation that took place with plaintiff eliminating, any and all information that would validate racial discrimination. He went as far as to document something plaintiff did not say or even imply. Notation to File entitled Favoritism Allegations: Item **4 "RACE IS NOT AN ISSUE"** What plaintiff said is "There are rules and laws of discrimination that Theresa is violating" "and I will file a claim with Equal Rights Commission if I have to" Dean then asks if plaintiff and Theresa could resolve the issue by better communication, plaintiff agreed to try. Why would plaintiff quote in the letter to Theresa that she had spoke with Dean and would attempt to resolve the issues prior to her filing a formal complaint with the ERC if Race Was Not An Issue? Mr. Maniscalco also avoided documenting plaintiffs complaint of the nickname her co-workers had given her and the book she mentioned was given to her in front of the entire staff.

3. It is clearly stated and documented in the interviews that plaintiff was not given the same opportunity as Monica Bullard a Caucasian employee; who had been placed on probation in July of 2000 and again in April of 2001 and was still afforded the opportunity

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817

to resign with dignity and future opportunity. It is also documented that plaintiff was billed and paid for long distance phone calls made to Cordova Alaska prior to management changes, another Caucasian employee was given permission to make long distance phone calls to Wasilla Alaska, and was not informed she would even have to pay for the calls. Plaintiff paid for calls to Cordova in 2000, and was not informed that there were several different phone numbers called. Plaintiff should only be obligated to pay for her personal phone calls to 907-424-5547 all other phone calls to Cordova should be the responsibility of the corporation.

4.      Plaintiff was unaware she should have been reporting each and all occurrences of her co-workers behavior, when the supervisor was present for many occasions, and took no action, when plaintiff did report any incident it was dismissed with the quoted words **"I gave them prior permission"** many occasions could not have been given prior authorization because supervisor wasn't present, and actions were spontaneous i.e. coping order forms for Tupperware, Candle Lite, Stamping UP Parties, recipes from magazines, Lengthy personal phone calls non-employees on premises, etc. etc. Supervisor also violated company policy with the same acts of conduct that plaintiff was terminated for etc. etc

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817

5. Would any person be expected to give an accurate and detailed description of? events, sixteen months after the events had taken place? It took the EEOC sixteen months to conduct the interviews. Would you or anyone be willing to incriminate your self by? giving information that they/you, had participated in racial discrimination? The same individuals that Paula Williams interviewed sixteen months later were also the same persons that conducted themselves in the exact same manner as the plaintiff, i.e. using company equipment for personal use, allowing non-employees on the premises, personal phones calls on company time this was the pattern plaintiff followed set by co-workers when plaintiff's employment began. As the only minority employee at the time, who else would actually? view or validate and accuse any of their co-workers behaviors and actions of their current supervisor as discrimination for each case Paula Haley-Williams personally handled in 2001 how many accurate details can she recall with out her notes to reference? Is it? reasonable to? expect co-workers to keep an accurate and detailed journal of events that occurred to another co-worker? Would they be honest enough to report **all** or any of the occurrences in which they violated a policy why did not one Caucasian employee report any offences on there Caucasian co-workers of the same behaviors they all had witnessed and participated in with their own actions why did not one? other employee report the

same events the plaintiff reported to Theresa that was so casually dismissed? Do you believe the plaintiff would have behaved so openly and casual had she believed her actions were not allowed? If an individual is attempting to do something illegal or not permitted, wouldn't they conduct themselves in a manner as to? avoid being caught?

DATED at Anchorage, Alaska   this 30th day of June 2006

>M. Celeste Barras
>160 Ocean Park Drive
>Anchorage, Alaska 99515
>
>By: *M. Celeste Barras-Rohan*
>Marna Celeste Barras-Rohan
>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

**Certificate of Service**

This is to certify that on this 30th day of June 2006, a true and correct copy of the Foregoing was mailed, to:

>TURNER & MEDE,   P.C.
>1500 West 33rd Avenue, Suite 200
>Anchorage, Alaska 99515-3401
>
>Attorneys for defendants
>HealthSouth Medical Clinics of Anchorage, LLC
>and U.S. Healthworks Holding Company Inc.

MARNA CELESTE BARRAS-ROHAN
CITIZEN OF THE UNITED STATES
160 Ocean Park Drive
Anchorage, Alaska 99515-3401
PHONE & FAX: (907) 336-1960 CELL: (907) 250-4817